# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# Appeal No. 23-968

COLLEEN MONE,

*Plaintiff-Appellant,*

v.

NEW YORK STATE UNIFIED COURT SYSTEM

*Defendant -Appellee.*

On Appeal from the United States District Court

For the Eastern District of New York

Civil Action File: 1:21-cv-06915

APPELLANT'S OPENING BRIEF

Colleen Mone in *Propria Persona*

1216 Yawl Way

Venice, FL 34285

# PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Colleen Mone certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. Lisa M. Evans (Appellee's counsel)
2. Diane Gujarati (U.S. District Judge)
3. Catherine Jakubik (Appellee's counsel)
4. New York State Unified Court System (Appellee)
5. Colleen Mone (*pro se* Appellant)
6. Craig E. Penn (Appellee's counsel)
7. Anthony Ralph Perri (Appellee's counsel)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Colleen Mone, hereby certifies that Plaintiff-Appellant has no parent corporation and no publicly held corporation owning 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Colleen Mone pursuant to Federal Rule of Appellate Procedure 34(a) and the Second Circuit Rule 34 1(a), does not request oral argument. The facts and legal arguments are adequately presented in the briefs.

- 2 -

## Table Of Contents                                                    Page

Table of Authorities.................................................................4

Statutes & Rules..................................................................4

Statement of Subject Matter and Appellate Jurisdiction................................5

Statement of the Issues Presented for Review  .........................................5

Statement of the Case................................................................ 6

Statements of Facts................................................................8

Summary of the Argument.........................................................12

Argument.......................................................................12

Conclusion..................................................................... 30

Certificates of Compliance and Service  ..............................................32

# TABLE OF AUTHORITIES

1) *Board of Trustees of University of Alabama v. Garrett*.................................................7, 18
    531 US 356 (2001)

2) *Brokamp v. James*.................................................................................................20
    573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021)

3) *City of Boerne v. Flores*........................................................................................17
    521 US 507 (1997)

4) *Giordano v. City of New York*...............................................................................22
    274 F.3d 740, 748 (2d Cir. 2001)

5) *Kozaczek v. New York Higher Educ. Servs. Corp*....................................................13
    503 F. App'x 60, 62 (2d Cir. 2012)

6) *Lapides v. Board of Regents of University System of Georgia*.................................13
    535 US 613 (2002)

7) *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*.........16
    25 F. Supp. 3d 459 (S.D.N.Y. 2014)

8) *School Board of Nassau County, Florida v. Arline*..................................................24
    480 US 273 (1987)

9) *Seminole Tribe of Florida v. Florida*......................................................................16
    517 US 44 (1996)

10) *Speaks v. Health Systems Management, Inc*............................................................23
    No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022)

11) *Tennessee v. Lane*...............................................................................................17
    541 US 509 (2004)

# STATUTES

28 U.S.C. §1291.......................................................................................................5

28 U.S.C. §1331.......................................................................................................5

42 U.S.C. §12101..................................................................................................5, 16

42 U.S.C. §12102(3)(A)............................................................................................26

42 U.S.C. §12202..................................................................................................7, 15

42 U.S.C. §12203(a)................................................................................................27

42 U.S.C. §12112.....................................................................................................5

# REGULATIONS

*29 CFR 1630.2* ..................................................................................................5, 25

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §1331 because this Court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112 as implemented by 29 CFR § 1630.

This Court has appellate jurisdiction under 28 U.S.C. §1291 because this appeal is from a final judgment.

On June 22, 2023, Judge Gujarati issued an order adopting Magistrate Judge Bloom's recommendation that the motion to dismiss filed by the New York State Unified Court System ("UCS") be granted and Colleen Mone not be granted leave to amend.

The Notice of Appeal was filed with the Clerk of the District Court on June 28, 2023. This appeal is timely under FRAP 4 (a)(4)(B)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented for review are the following: (1) whether Mone's claims under the ADA were barred by state sovereign immunity under the Eleventh Amendment; (2) whether Mone was disabled within the meaning of the ADA; and (3)

whether Mone's termination was retaliatory and not simply a standard disciplinary measure for non-compliance with a normal and lawful policy.

## STATEMENT OF THE CASE

On December 10, 2021, Colleen Mone filed a complaint against her employer, UCS, for violations of the Americans with Disabilities Act Amendments Act ("ADA-AA") for discrimination and retaliation on the basis of disability.

On June 10, 2022, Mone filed an amended complaint. Therein, Mone argued that UCS's "Covid policy" demonstrates that it discriminated against her based upon a perceived disability, under the "regarded as" and "record of prong". When Mone objected to comply with the policy's measures, such as testing and vaccination, UCS continued to impose them without first conducting an individualized assessment to determine if she was a direct threat. UCS also retaliated against Mone by interfering with her rights, imposing punitive measures, removing her from scheduled work-shifts, falsely declaring her unfit for service and ultimately terminating her employment, which is prohibited under the ADA-AA.

On August 4, 2022, UCS filed a motion to dismiss Mone's amended complaint. Therein, it argued that the Court should dismiss the amended complaint because (1) non-consenting States may not be sued in federal court by individuals under the

Eleventh Amendment to the Constitution; (2) the complaint failed to state a claim for disability discrimination or retaliation; and (3) the amended complaint was frivolous.

On September 15, 2022, Mone filed a response to UCS's motion to dismiss and argued that it had no immunity under the Eleventh Amendment because: (a) Congress waived immunity under Section 12202 of the ADA-AA of 2008; (b) UCS consented by receiving federal funds, employing ADA personnel; and publishing its commitment to comply with the ADA on its website; (c) UCS consented by making an established appearance in the proceeding; and (d) the facts that gave rise to the complaint were based upon policies implemented by UCS which are not legitimate or rational. Further, Mone argued that she sufficiently pled the elements of both claims of disability discrimination and retaliation.

On October 4, 2022, the District Court entered an order referring the motion to dismiss to Magistrate Judge Lois Bloom for a Report and Recommendation, which was filed on March 22, 2023. Therein, Magistrate Judge Bloom recommended that the District Court should grant UCS's motion to dismiss Mone's amended complaint.

The Magistrate Judge reported that the District Court lacked subject matter jurisdiction to adjudicate Mone's claims under the ADA because they were barred by state sovereign immunity under the Eleventh Amendment. Magistrate Judge Bloom argued that UCS was immune from Mone's claims regardless of the relief she sought because it had not waived its immunity by appearing in the lawsuit or by filing motions

to dismiss. Additionally, the Magistrate Judge reported that the Supreme Court held in *Garrett* that Congress did not validly abrogate States' sovereign immunity for claims under Title I of the ADA and the ADA Amendments Act of 2008 did not overrule this holding.

Moreover, Magistrate Judge Bloom reported that, even assuming UCS had consented, Mone's amended complaint failed to state a claim for discrimination and retaliation and therefore, UCS's motion to dismiss should be granted.

On June 22, 2023, the District Court entered an order adopting Magistrate Judge Bloom's recommendations and dismissed Mone's complaint without leave to amend.

On June 28, 2023, Mone filed a Notice of this Appeal. On June 30, 2023, the court docketed the appeal.

## STATEMENT OF FACTS

Colleen Mone was employed as a Court Officer in the UCS for 16 years. On September 1, 2021, she received a memorandum titled "Mandatory Testing Program" signed by the Chiefs of Operations and Administration, which established obligatory weekly testing; required employees to enter a record of test results on the UCS Sharepoint site; and coerced employees to get a "Covid vaccine", which are experimental injections[1], and share "vaccination status" via the UCS Employee web

---

[1] These injections are under Emergency Use Authorization, and come with conditions of informed consent and right of refusal.

- 8 -

portal. The memo also detailed harassing measures to be meted out by supervisors and threatened employees with not being allowed to work if they did not submit to the new policy. (*Aff.* ¶¶ 9-10; Exhibit A-1)

On September 8, 2021, Mone sent a letter to Lawrence Marks, Deputy Chief Judge in which she discussed the discrimination she was experiencing and mentioned that their Court Officers Union needed to be included in any policy-making decisions. (*Aff.* ¶ 11; Exhibit A-2)

On September 10, 2021, Mone received a "Vaccine mandate" memo signed by the Chiefs of Operations and Administration, which stated that Mone must receive an experimental injection treatment[2] by September 27, 2021 or her job would be at risk and she would likely be fired. This memo showed that UCS was responding to Mone as if she was a "direct threat" of contagious disease, however UCS was not relying on any medical diagnosis of Mone. The memo further showed that UCS was imposing an experimental medical treatment as a new condition of employment and threatening Mone with termination if she did not receive this treatment. The memo significantly **did not** contain any information about the experimental injection treatment which would assist Mone in giving informed consent (ie; a risk/benefit analysis, a notice of the right of refusal because the treatment was classified as experimental). (*Aff.* ¶ 12; Exhibit A-3)

---

[2] A novel mRNA injection that neither claimed to prevent transmission of the COVID flu or to provide immunity to it, it was simply claimed to lessen symptoms of the COVID flu if the user developed such a condition.

On September 15, 2021, Mone gave several agents of UCS a letter titled "Notice of Discrimination and Harassment based upon Disability" which claimed that UCS was assuming Mone was a direct threat of a contagious disease without any objective evidence and Mone was putting UCS on notice that this qualified as discrimination under the ADA for a "perceived" disability rather than an "actual" disability. She insisted that UCS recognize her rights to informed consent and right to refuse experimental medical treatments. She was thorough and mailed or emailed this notice to several UCS agents including the Chiefs of Operations and Administration, Carolyn Grimaldi in Human Resources and Eva Moy in the Office of Managing Inspector General for Bias Matters (OMIGBM). Mone asked both offices to create a file for the purpose of documenting the discrimination, harassment and retaliatory threats of termination if she did not receive the experimental medical treatment for a condition she had not been diagnosed with. (*Aff.* ¶¶ 13-15; Exhibits A-4a, A-5a, A-5b)

UCS representatives simply denied perceiving Mone as a direct threat of deadly contagion. Colleen Mone learned from her spouse that Eva Moy, OMIGBM, claimed that her office was not responsible for processing employee discrimination claims and did not have jurisdiction to do so, however Moy never responded to Colleen Mone directly. Mone asked to be directed to an employee designated to handle ADA issues but she received no response. (*Aff.* ¶¶16, 17; Exhibits A-7, A-8)

- 10 -

On September 20, 2021, Mone filed a Charge of Discrimination and Harassment with the EEOC. She sent a copy to Eva Moy, OMIGBM and Carolyn Grimaldi, Human Resources. Both Ms. Grimaldi and Ms. Moy refused to process or investigate Mone's complaint of discrimination. (*Aff.* ¶¶ 18-19; Exhibits A-9, A-10) No agent for UCS responded to Mone by doing an intake. All of the agents Mone contacted refused to assist her, and there was no administrative remedy made available to her. (*Aff.* ¶¶ 23-25)

On September 25, 2021, Mone's supervisor ordered her to quarantine "per office of administration policy" because she was in the same locker room as another co-worker who "tested positive"[3] the day before. She was told to quarantine until October 4, 2025. (*Aff.* ¶ 25)

On October 4, 2021 the New York State Court Officer Association sued and was granted a temporary restraining order effectively putting the office of court administrations mandate on hold. (*Aff.* ¶ 25)

On October 18, 2021, Mone was handed a letter by her Captain Robert Miglino informing her that she was "unfit to serve" as long as she remained "unvaccinated". She was effectively terminated as of October 19, 2021 and was classified as "non-compliant". Mone challenged both accusations by providing Captain Miglino with an

---

[3]  A "Covid test" result is not considered a diagnosis, and this is stated on the package, however the UCS treated it as such and further assumed that locker-mates wre also infectious and needs quarantine without due process, which is completery irrational.

"Invocation of Rights" notice, in which she stated that she had the right to informed consent, right to refuse experimental medical treatments, right to medical privacy, right to due process, and other rights protected under the ADA. Therefore, Mone did not have to comply with the "Covid policy". Mone also sent this document via email to several UCS authorities. She received no response. Mone also decided to send her captain a daily email stating that she was fit for duty while she remained barred from working. (*Aff.* ¶ 26)

Mone received her Right to Sue Letter from the EEOC on December 7, 2021. (*Aff.* ¶ 28, Exhibit A-12)

## SUMMARY OF THE ARGUMENT

Mone argues that UCS has already consented to suit by its acceptance of federal ADA funding, salaried positions for ADA staff, and its commitment to ending discrimination in the workplace and in the public court facility itself. Additionally, UCS has made an established appearance in this case as evidenced by the years of litigation. Mone is also suing for injunctive relief and to be made-whole in addition to requesting punitive or private damages.

Furthermore, Mone argues that she is disabled within the meaning of the ADA and her firing by UCS was, in fact, retaliatory. Therefore, she successfully stated claims of disability discrimination and retaliation under the ADA.

- 12 -

# ARGUMENT

## I. Mone's claims under the ADA are not barred by state sovereign immunity under the Eleventh Amendment.

The District Court held that it lacks subject matter jurisdiction to adjudicate Mone's claims for employment discrimination and retaliation under the ADA because they are barred by state sovereign immunity under the Eleventh Amendment, regardless of the relief sought. Judge Gujarati held that Mone's arguments –that UCS waived its immunity and Congress abrogated sovereign immunity by enacting the ADA– failed. The standards of review are judicial error and abuse of discretion subject to *de novo* review.

## A. UCS waived immunity and consented to be sued for ADA violations.

The District Court held that UCS was a part of this trial because Mone named it as defendant, not because of any voluntary act, arguing that UCS did not remove this case from state court to federal court like in *Lapides v. Bd. of Regents of Univ. Sys. of Georgia.* Judge Gujarati argued that UCS had not waived Eleventh Amendment immunity to plaintiff's ADA claims by appearing in these lawsuits or by "filing motions to dismiss," based on *Kozaczek v. New York Higher Educ. Servs. Corp.*, 503 F. App'x 60, 62 (2d Cir. 2012) (summary order). However, this is not a binding precedent on this Appellate Court since the case is classified as not precedential.

- 13 -

UCS came into court and *never* stated it was making a limited appearance just to answer the summons and claim immunity. On the contrary, they engaged in over a year's worth of litigation, as is evidenced by the record.

Mone argues that UCS had already consented to be sued for violations of the ADA because it consented to receive ADA funding and has a well-established commitment to end discrimination in the workplace and in the public court facility itself, which is published on its website. Being subject to the ADA is a condition on the grant of federal money. Additionally, UCS has infrastructure and a budget supporting this commitment. Why is UCS permitted to claim it is complying with federal law (even when it is not) but then for the same exact set of facts, claim it is somehow also immune from liability for violating federal law? Why does its website https://ww2.nycourts.gov/Accessibility/index.shtml state the following:

> "About the Americans with Disabilities Act (ADA)
> The Americans with Disabilities Act (ADA) is a federal law prohibiting discrimination against qualified individuals with disabilities. As defined by the statute, a person with a disability is one who has a physical or mental impairment that substantially limits a major life activity. The ADA also protects people who have a history of such an impairment, or who are regarded as having such an impairment.
> The New York State Unified Court System is committed to fully complying with the Americans with Disabilities Act by providing services, programs and activities in a way that assures equal and full accessibility for all court users.
> For more information about the ADA and the courts, please see our Reasonable Accommodations for Court Users and ADA Accommodation Request Process.
> For questions, concerns or assistance, please email: ADA@nycourts.gov."

And if UCS is not subject to the ADA, why does it have budgeting and a financial allocation for an official ADA coordinator?[4] UCS has certainly received federal funds; in fact, in addition to assorted federal funds it has been receiving from the United States for decades[5], it has also recently been receiving MILLIONS of dollars in the form of "disaster relief funds[6]". Additionally, the District Court is also participating in the same bonanza and has the same inherent conflict of interest as does UCS and thus is also not immune under the same principle.

UCS has Services and/or other programs that actively support the rights of disabled individuals and are designed to address ADA claims before they materialize. However, in Mone's case, she documented that the very agents designated to assist her and address her claims refused to help and in fact were instrumental in her firing. Therefore, the UCS has waived immunity because they failed to properly address her claims at the administrative level and the government must be held liable when no adequate alternatives exist to find a remedy.

**B. Congress abrogated state sovereign immunity in ADA cases specifically.**

Congress abrogated state immunity from suit under the Eleventh Amendment when it enacted the ADA. This is specifically addressed in its Section 12202 which

---

4 This government employee can be contacted at New York State Office of Court Administration, Statewide ADA Coordinator, 25 Beaver Street, 7th Floor, New York, NY 10004, e-mail: ada@nycourts.gov, (212) 428-2760
5 Unified Court System received $2.5 million since July of 2023; https://www.osc.state.ny.us/reports/covid-relief-program-tracker and state agencies have received $5 billion and NYS has received $35 billion.
6 Even though official medical examiner's records and DOH records show no evidence of any "pandemic" based upon relevant mortality records. Nor does a "pandemic" allow the state to violate any laws, nor would such a condition give the state any new legal authority or duty as it has been claiming via it's "Covid policies".

clearly establishes: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

The District Court cited *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*, which holds that because UCS and the Office of Court Administration are immune from FLSA claims, they are also immune from suits seeking declaratory relief for FLSA violations. It also cited *Seminole Tribe of Fla. v. Florida*, in which the Supreme Court held that "Congress lacks power under Article I to abrogate the States' sovereign immunity from suits commenced or prosecuted in the federal courts". However, these cases are not applicable, since they refer to laws enacted pursuant to Congress' Article I power and not the ADA which is enforced under the Fourteenth Amendment. As per §12101 of the ADA, its purpose is "(4) to invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

In *Seminole Tribe v. Florida*, the Supreme Court held that Congress had acted properly under its authority to pass legislation under the Fourteenth Amendment because the disabled are protected against discrimination by the Equal Protection Clause. The purpose of the ADA and the Rehabilitation Act is to prevent discrimination against the disabled. The Court stated that "[b]oth the ADA and the Rehabilitation Act [...] are within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court. At the same time, neither Act provides remedies so sweeping that they exceed the harms that they are designed to redress. We therefore agree with the district court that both the ADA and the Rehabilitation Act were validly enacted under the Fourteenth Amendment."

In *Tennessee v. Lane*, the Supreme Court held that Title II of the ADA, as it applies to the fundamental right of access to the courts, constitutes a valid exercise of congressional authority under section 5 of the Fourteenth Amendment. The Court noted that when analyzing an Eleventh Amendment immunity issue, two questions must be resolved: (1) whether Congress unequivocally expressed its intent to abrogate; and (2) if so, whether it acted pursuant to a valid grant of congressional authority. The Court found that the ADA specifically provides for abrogation so it then applied the test set out in *City of Boerne v. Flores,* which found that legislation enacted pursuant to section 5 of the Fourteenth Amendment is valid if it had "a congruence and

- 17 -

proportionality between the injury to be prevented or remedied and the means adopted to that end."

These conditions have been met. Under the Fourteenth Amendment, it is legitimate for Congress to protect individuals with disabilities from being discriminated and retaliated against on the basis of their disability in their workplace. The remedies available under the ADA are congruent and proportional to said end. According to the EEOC[7], the goal of the ADA is to put the victim of discrimination in the same position (or nearly the same) that they would have been if the discrimination never occurred. The employer will also be required to stop any discriminatory practices and take steps to prevent discrimination in the future. The remedies may include back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, reinstatement, positive/neutral reference letter, reasonable accommodations, modified policies, ADA/disability training. Notably the Act provides remedies that are not "... so sweeping that they exceed the harms that they are designed to redress". (*ibid*)

UCS argues that States may not be sued specifically for "monetary damages" under the ADA and cited the Supreme Court's ruling in *Board of Trustees of Univ. of Alabama v. Garrett*. "in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States

---

7 EEOC, Remedies for Employment Discrimination, available at: https://www.eeoc.gov/remedies-employment-discrimination

which violates the Fourteenth Amendment[8], and the remedy imposed by Congress must be congruent and proportional to the targeted violation."

*Garrett* establishes the conditions under which even monetary damages may be pursued, it does not prohibit them. The three conditions that the *Garrett* case makes clear: (1) the State must not use sovereign immunity to deprive an individual of privileges, property, due process or equal protection of the law; (2) money damages will only be allowed if a pattern of such abuse or discrimination has been established; and (3) the remedy imposed by Congress must be aligned to the violation.

In the Mone case, she has fully claimed that her property rights were violated without the due process stated in the NYS public health laws and in the ADA when UCS adopted the flawed "Covid policy". In addition, a pattern of New York state violations of the ADA, due to implementing the flawed "Covid policy", have, in turn, violated the Fourteenth Amendment as has been established by the sheer number of court cases in the federal courts of New York and across the country filed by people whose employment was terminated as retaliation for not complying with discriminatory "Covid policies" that regarded them as direct threats and mis-classified them as still impaired for refusing non-job-related medical treatments, tests and disability related inquiries.

---

[8] Fourteenth Amendment, Section 1. Substantive Due Process and Equal Protection Clauses. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Even supposing Mone is precluded from receiving certain monetary damages, this does not preclude her from receiving badly needed injunctive relief or compensatory damages that simply return what was taken and do not count as "damages". Additionally, the Court is aware of the parameters of relief that it can grant, and it is not a reason to **dismiss a case** because a plaintiff asks for relief outside those parameters. The Court can easily grant compensatory relief such as reinstatement and the complete return of Mone's previous work status and benefits without "straining the coffers of the state" and this would certainly qualify as a remedy that in no way exceeds the harm she endured, which is the condition placed upon ADA relief. Furthermore, injunctive relief is not monetary: the Court can order UCS to stop violating the ADA and relevant public health laws and to make Mone whole again by acknowledging her property rights and by returning what was taken from her, that is, getting her job back or receiving back-pay; have her pension and benefits returned; and have her negative employment record expunged.

Judge Gujarati is perfectly capable of awarding such requests for relief that can be allowed (injunctive and compensatory) and may even award punitive damages and still not award damages that "exceed the scope of of the harm" Mone endured. Mone has asked for injunctive relief and to be made whole. In fact, it should be noted that UCS has refused to reinstate her, despite being ordered to do so by an Administrative

Law Judge in the PERB decision and despite her thorough application for reinstatement which is on file with UCS.

The District Court broadly extrapolated *Brokamp v. James*[9], as if it supported the concept that all forms of relief, not just "money damages" were barred under state sovereignty however, *Brokamp* is not applicable since it does not refer to the ADA or any other statute which protects against violations of property rights of those with disabilities.

Based on the above, the District Court does have subject matter jurisdiction to adjudicate Mone's claims. Is the Court really saying that it will allow the State, as an employer, to harm individuals without any judicial review possible, and with no administrative remedy or any other remedy available? What is the remedy? Due process requires a judicial forum, and if this is denied, Mone would like this court to explain what remedy she has.

## II. Mone was disabled within the meaning of the ADA[10].

The District Court misconstrued that the only support Mone offered for her contention that UCS regarded her as having a disability was the fact that she was subject to UCS's "Covid policy" requiring employee testing and, subsequently, vaccination. Yet, the actual definition of being regarded as disabled always includes

---

[9] *Brokamp v. James* 573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021)
[10] The District Court referred to Rehabilitation Act and the ADA equivalents, but it should be understood that Mone is suing under Title 1 ADA as the UCS is her employer.

identifying adverse actions taken because of the discriminatory perception. While the Court tries to misrepresent the facts, Mone satisfied the standard that the Court itself pointed out:

> "Under the ADA, an individual is 'regarded as' having a disability 'if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment'" (Report and Recommendations, p. 15)

Mone properly alleged that she was subject to prohibited actions because of her employer's perception that she was a direct threat and, when she refused treatments, that she was too impaired to work. (*Amend. Compl.* ¶ 16, 17, 23, 41, 43-48, 57-60).

UCS demonstrated a perception of Mone as impaired. UCS admitted that its "Covid policy" was intended to treat and prevent the spread of a deadly, contagious disease. The policy assumed that every employee, Mone included, was a direct threat of such a disease and then UCS proceeded to require (experimental) treatments for the disease, and the policy is on record as treating all UCS employees as if they were simultaneously at risk and posed a risk to the health of all other employees. Due to the fact that the policy significantly did not rely upon an individualized risk assessment or diagnosis, it is objectively true that the "Covid policy" was based upon the pure speculation and hypothetical belief that every employee of defendant was a direct threat and too impaired to work unless treated for the perceived impairment. Therefore, the policy assumes that all employees had an on-going and indefinite condition of impairment as long as they remained "untreated" by the mitigation measures outlined

- 22 -

in the policy. This is UCS's perception, and as the Court correctly noted[11], "the decisive issue is the employer's *perception* of his or her employee's alleged impairment." *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001) (citation omitted) (emphasis in original).

The "Covid policy" imposed a new qualification standard such that "treated" employees could work and "untreated" employees were subject to termination and other adverse employment actions since "untreated" employees continued to be misclassified as impaired. This is because the policy continued to regard the "untreated" employees as a continual direct threat of a deadly, contagious disease, despite UCS failure to rely upon any individualized risk assessment. Indeed, the policy imposes mitigation measures upon all workers without considering an individualized medical assessment of an employee's health.

The Court cites *Speaks v. Health Sys. Mgmt., Inc.*, to argue that "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [plaintiff] that, while [plaintiff's] to make in this context, cannot be considered an impairment under the ADA." It should be clear by now that Mone's "unvaccinated status" is not the (perceived) disability or (perceived) impairment she is claiming; rather it is the (non-job-related) medical treatment UCS wanted her to undertake because it perceived her a direct threat and wanted her to get treatment for the perceived impairment.

---

[11] See Magistrate Judge Bloom's Report & Recommendations, p. 16.

UCS also maintained records of "vaccine status" in order to implement adverse employment on the untreated. The purported "vaccine" requirement demonstrates very clearly that UCS regarded Mone (and all employees) as a direct threat of a contagious disease[12], and it demanded that she (and all employees) get the experimental injection treatment and it kept records of who received these treatments.

In her Response to UCS's Motion to Dismiss, Mone argued that "[t]here is no rational basis to act as if every single member of a community (e.g. all employees of the defendant) suddenly have the same exact illness (disability) and to conclude, without any examination of anyone, that everyone would benefit from the same exact medical treatment." However, the District Court argued that Mone's objective description of UCS's actions was exactly why her claims were not "plausible". Why is it Mone's fault that her employer was acting irrationally? Why is her claim not "plausible" if what she describes is exactly what her employer did? This clearly demonstrates the District Court's bias against Mone. The District Court falsely stated that it empathized with Mone, but asserted without pointing to any facts, that she was simply "mistaken" in her "belief that COVID precautions instituted to protect public health translate into a belief or perception that all people are disabled." The Court did not address the issue Mone actually presented which is that she was regarded as a

---

[12] It must be noted that the Supreme Court held in *School Board of Nassau County, Florida v. Arline*, 480 US 273 (1987), both the "contagious effects of a disease" and "the disease's physical effects" can impair the patient's ability to work, and therefore were considered as disabilities.

direct threat of contagion without objective proof and that this is the basis of her claim that the UCS acted irrationally.

The Court also assumes that "COVID precautions"[13] should be imposed even in the absence of a diagnosis showing medical necessity. The District Court ignored the fact that medical treatments are only prescribed once a condition has been established. Without an assessment establishing that Mone was contagious, there is no basis for the UCS to impose treatment upon her or anyone else. The District Court allowed UCS to unilaterally impose medical treatments upon all employees regardless of their medical condition. This is why Mone claims she was regarded as impaired: there was never an objective assessment. In addition, neither UCS nor the District Court pointed to a single public health law that established a legal duty of employers to "protect public health" with "COVID precautions".

The Court argued that Mone failed to allege "any details supporting how" the alleged impairments "substantially limit[ed] any major life activities," which they identify in their opposition as working, breathing, and thinking. However, Mone **is not required** to allege that the (perceived) impairment substantially limited her.[14] Under the circumstances of her claim, she is required to allege that UCS misclassified her as

---

13 "COVID precautions" = experimental injection treatments, "Covid testing" replacing doctor's diagnosis, masking which is not shown to prevent viral transmission yet, if it did, should therefore protect the user. All treatments can simply be undertaken by any individual who wishes to use these measures. Mone does not need to undertake the treatments in order to make another individual's treatments work. That has never been a component of medical treatment.
14 To state a prima facie disability claim based on a "record of" a disability, a plaintiff must plausibly allege a "history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, *or was misclassified as having had such an impairment.*" 29 C.F.R. § 1630.2(k)(2) *(emphasis added)*

- 25 -

substantially impaired, which Mone has done. This concept is further emphasized in the statute outlining how a "regarded as" or perceived disability can be shown objectively. The standard for a "regarded as" disability claim requires the individual to establish that she has been "...subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *42 U.S.C.S. § 12102(3) (A)*. Therefore, the Court incorrectly asserted that a showing of "substantial limitation" was required and the Court failed to focus on the adverse actions alleged which demonstrate the perception of the employer.

## III. Mone's firing was retaliatory.

The District Court held that Mone's termination did not give rise to an inference of retaliation, notwithstanding that it followed shortly after her allegedly protected activity. Judge Gujarati stated that Mone's opposition to UCS's vaccine mandate as well as her September 20, 2021 EEOC charge occurred after defendant issued and distributed the vaccination policy memorandum on September 10, 2021. This is not only immaterial but untrue. Mone filed a letter on September 8, 2021 with Lawrence Marks opposing the recently announced testing policy. It is clear that the moment the "Covid policy" began to be rolled out, Mone opposed it. The Court held that from the moment the vaccine mandate was announced Mone risked termination if she failed to comply, and she was disciplined as a consequence of her failure to comply with the

vaccine mandate, rather than as retaliation for her opposition to it. Judge Gujarati is using word salads to actively defend UCS. It is perfectly clear that Mone did not "comply" with the policy because she engaged in protected opposition to the policy on the basis that it violated her rights protected under the ADA. Clearly Mone's opposition results in non-compliance, especially when "compliance" requires an experimental injection treatment that cannot be undone.

Title I of the ADA prohibits retaliation against any individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under the ADA." *42 U.S.C. §12203(a)*.

To state a claim for ADA retaliation, a plaintiff must allege that: (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.

Mone complied with this when she properly alleged that she opposed UCS's "Covid policy" because it contained several violations of the ADA without due process. She gave notice to her employer of this and put UCS on notice that she was being regarded as disabled and subjected to discrimination and harassment based upon disability.[15] It was directly because of her opposition, and simultaneous non-

---

[15] She expressed her opposition in a number of ways, including several written notices to her employer that she was being discriminated against and she filed an EEOC complaint.

compliance, with the "Covid policy" that Mone was fired and there was no other reason.

However, the District Court is deliberately mislabeling UCS' retaliatory and punitive conduct against Mone as "disciplinary measures", as if she was being disciplined for being habitually late on the job, when the reality is that Mone was fired for opposing and not complying with a policy which she correctly identified as illegal, because it was discriminatory, which interfered with her rights, and imposed non-job-related medical examinations and experimental treatments upon her as a new condition of employment without any objective evidence or individualized risk assessment. Mone was not "disciplined", which pre-supposes the punishment is justly meted out; UCS has no authority to compel experimental medical treatments upon its employees, the policy is illegal, and she was retaliated against because she opposed the policy and refused the medical treatments and fought for her rights through the civilized avenue of engaging the protection of the ADA to create a forum for claiming her rights. UCS refused to allow her access to any remedy and ignored her rights and its duty to uphold the ADA in exchange for $2.5 million in "Covid" money. The Court apparently thinks this is perfectly acceptable and is even arguing for the defendant.

It must be noted that UCS did not deny imposing adverse actions on Mone. UCS did not deny Mone's following allegations: (1) that the purpose of the "Covid policy" was to treat and prevent the spread of a deadly, contagious disease; (2) that the policy

regarded all "unvaccinated" employees as in need of further treatment; (3) that the policy itself was a "materially adverse change in the terms and conditions" of her employment because it imposed non-job-related medical inquiries upon her as a new condition of employment; and (4) that it fired Mone because she refused non-job-related medical inquiries and treatments.

The District Court ignored the fact that UCS's "Covid policy" was illegal.[16] It also materially and adversely changed Mone's terms and conditions of employment, without any prerequisite new legal duty or legal authority for UCS to impose it upon employees. The District Court fails to cite the source of any such authority. Even if there were evidence of a "global pandemic", that again did not give UCS any new legal duties or authority to impose its "Covid policy" measures on Mone. In fact, the employer-imposed "Covid vaccine mandates" have been stricken down by three separate rulings in New York Superior Courts.[17] And UCS has been specifically upbraided by the PERB ruling. It is axiomatic that the emergency declaration did not create a new legal authority or any new legal duty to impose the "Covid policy". This policy did not and cannot amend or repeal existing law, nor did it or can it countermand existing public health law[18] and disability law.

---

16 The District Court adopted the prejudicial narrative and terminology contained in the "Background" section of the Report & Recommendations: which claimed that UCS adopted "rules" and a medical treatment "mandate" instead of analyzing the legality of such a policy as Mone's claim demands.
17 *Med. Professionals For Informed Consent v. Bassett*, 2023 N.Y. Slip Op. 23020; *Garvey v. City of New York* NY Slip Op 22335; and *Police Benevolent Ass'n of City of New York v. City of New York*, 2022 N.Y. Slip Op. 33185
18 Specifically, Chapters 1.23 through 1.43 of the New York State Public Health Manual.

UCS's "Covid policy" imposed medical treatments which are classified by the FDA as experimental since they fall under an FDA Emergency Use Authorization period which amounts to a clinical trial phase; this classification includes two requirements: (1) right to refuse treatments, and (2) right to informed consent which must include a risk-benefit analysis. Neither of these conditions were met by UCS.

Moreover, the treatments were imposed without benefit of diagnosis, meaning the treatments were applied to every employee without the policy first requiring an individual assessment to determine if the employee actually had a medical condition that might benefit from receiving the treatments. This means that the policy was imposed based upon the hypothetical assumption that all employees should be treated.

Furthermore, UCS is imposing medical treatments as a new qualification standard for employment which are not job-related because Mone is perfectly capable of performing the essential functions of the job without using any of the treatment measures. Finally, it is completely illogical to require Mone to take medical treatments in order to make medical treatments work for others.

These significant allegations show that opposition is warranted and compliance is actually disdainful. It is illogical for the District Court to argue that Mone was only being disciplined for non-compliance. When has it been legal to be disciplined into complying with an illegal and discriminatory policy that violates the rights like bodily integrity, informed consent, due process and to refuse experimental medical treatments?

- 30 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the reasons herein the Court's decision constitutes an abuse of discretion and is clearly erroneous and should be reversed.

WHEREFORE the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this 15 day of August, 2023.

Colleen Mone, Appellant

## CERTIFICATE OF COMPLIANCE

I, Colleen Mone, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 6,191 words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: [signature]

## CERTIFICATE OF SERVICE

I, Colleen Mone, hereby certify that a true and correct copy of the foregoing Opening Appeal Brief was duly served upon New York State Unified Court System's attorney Lisa M. Evans, at the address of NYS Office of Court Administration; 25 Beaver Street; New York, NY 10004, via electronic mail on this 15 day of August, 2023.

I further certify that a true and correct copy of the foregoing Opening Appeal Brief was duly served upon the United States Court of Appeals for the Second Circuit at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, via electronic mail on this 15 day of August, 2023.

By: [signature]



ORIGIN ID:SRQA (812) 889-3654
CHRISTOPHER LOUIS MONE
1216 YAWL WAY
VENICE, FL 34285
UNITED STATES US

SHIP DATE: 26AUG23
ACTWGT: 6.05 LB
CAD: 6992578/SSF02422

BILL CREDIT CARD

TO ATTN: CLERK'S OFFICE

40 FOLEY SQUARE

NEW YORK NY 10007
(212) 867-8676          REF:
PO:                    DEPT:

FedEx
Express

E

TRK# 7829 6309 6200
0201

WED – 30 AUG 5:00P
EXPRESS SAVER

SE PCTA                        10007
                          NY-US  EWR