IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————————

# Appeal No. 23-968

———————————————

COLLEEN MONE,

*Plaintiff-Appellant*,

v.

NEW YORK STATE UNIFIED COURT SYSTEM

*Defendant -Appellee*.

———————————————

On Appeal from the United States District Court

For the Eastern District of New York

Civil Action File: 1:21-cv-06915

———————————————

APPELLANT'S REPLY BRIEF

———————————————

Colleen Mone in *Propria Persona*

1216 Yawl Way

Venice, FL 34285

# PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Colleen Mone certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. Lisa M. Evans (Appellee's counsel)
2. Diane Gujarati (U.S. District Judge)
3. Catherine Jakubik (Appellee's counsel)
4. New York State Unified Court System (Appellee)
5. Colleen Mone (*pro se* Appellant)
6. Craig E. Penn (Appellee's counsel)
7. Anthony Ralph Perri (Appellee's counsel)
8. Andrea Trento (Appellee's counsel)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Colleen Mone, hereby certifies that Plaintiff-Appellant has no parent corporation and no publicly held corporation owning 10% or more of its stock.

# STATEMENT REGARDING ORAL ARGUMENT

Appellant Colleen Mone pursuant to Federal Rule of Appellate Procedure 34(a) and the Second Circuit Rule 34 1(a), does not request oral argument. The facts and legal arguments are adequately presented in the briefs.

**Table Of Contents** **Page**

Argument.................................................................................................. 4

Conclusion............................................................................................…. 13

Certificates of Compliance and Service  …………………………………………...14

**ARGUMENT**

Plaintiff-Appellant ("Mone") replies to appellee's answer brief.

**I. UCS has voluntarily waived its immunity.**

UCS failed to address two specific facts Mone outlined in the Opening brief which demonstrate the conditions under which UCS has waived its immunity. They are: 1.) UCS voluntarily came into the district court, engaged in over a year's worth of litigation and never once claimed it was making a limited appearance. Thus, it waived its immunity by appearing and engaging. Mone has already shown that the case[1] cited by the district judge upon which the judge based her ruling does not apply to the facts in this case nor was that case a precedent uon which the court could rely. UCS did not respond to this specific point of the judge's erroneous conclusion based upon inapplicable case law.

Instead UCS cited other irrelevant cases which were used to argue against its voluntary engagement but which also do not apply to the facts established in this case. UCS has engaged in affirmative litigation practices, it is not engaged in commerce with Mone and UCS appeared and engaged specifically in the district court forum.

2.) UCS has a published commitment to uphold the ADA both in its Title II capacity as a public court and in its Title I capacity as an employer. It has accepted federal funds

---

[1] *Kozaczek v. New York Higher Educ. Servs. Corp.*, 503 F. App'x 60, 62 (2d Cir. 2012)

and it is committed to providing ADA access as a court and as an employer with established services and programs. The cases mentioned by UCS are based on *Garrett* in which the Supreme Court decided only the issue of whether suits for **money damages** brought pursuant to Title I of the ADA are barred by the Eleventh Amendment. *Garrett* does not bar private citizens from suit against the State. It set forth conditions on what relief is available. Mone has asked for injunctive relief as well as being made-whole, and for any punitive or money damages the court would apply. Mone's whole case is not abolished simply because a portion of the relief Mone asks for is monetary damages. The court is perfectly capable of applying only the relief which it may and can disregard any request for relief that is outside its power to provide. The 11th Amendment waiver is applied to the extent that **monetary damages** are limited by proportionality so that state coffers would not be drained. Mone's suit asks that the court apply injunctive relief to correct the outrageous rights violations perpetrated by the UCS as an employer. Mone also asks that the reinstatement provisions already ordered in the PERB ruling be honored by the court. Neither of these reliefs qualify as being "**monetary damages**" because they simply uphold the *status quo* which UCS disrupted. According to the EEOC[2], the goal of the ADA is to put the victim of discrimination in the same position (or nearly the same) that they would have been if the discrimination never occurred. Further, *Garrett* held that even monetary

---

2 EEOC, Remedies for Employment Discrimination, available at: https://www.eeoc.gov/remedies-employment-discrimination

damages may be appropriately awarded if a pattern of abuse has been established, which Mone clearly demonstrated exists in the "COVID policy".

## II. The ADA is enforced under the 14th amendment.

As per §12101 of the ADA, its purpose is "(4) to invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." The relevant holding of the Supreme Court in *Seminole Tribe v. Florida* 116 S.Ct. 1114 (1996) is "...that both the ADA and the Rehabilitation Act were validly enacted under the Fourteenth Amendment." Judge Gujarati, Magistrate Bloom and UCS tried to confuse matters by stating that Mone does not have a retaliation claim under the 504 Rehabilitation Act (which is essentially the ADA for federal employees). However, Mone does not make **any** claim under the 504 Rehabilitation Act. This was a figment of the court's creation. Mone makes a claim under Title I as the UCS was Mone's employer. ADA enforcement is under the 14th amendment and is what entitles Mone to a claim, not the 11th amendment. The conditions for waiver are under the 11th amendment and have not been satisfied by UCS. None of the "11th amendment cases" cited by UCS address the question of whether Mone is allowed to make a claim; because the claim is allowed under the 14th amendment. The "11th amendment cases" only address the conditions necessary to effect waiver; not Mone's entitlement to a claim.

**III. Mone has sufficiently pled a "perceived disability" claim under both the "regarded as" and the "misclassified" (record of) prongs.**

    **a. UCS acted *as if* Mone had a perceived diability.**

UCS incorrectly states that Mone is required by the pleading standards to show that UCS "regarded" or "perceived" Mone as disabled. This is incorrect. Under the regarded as prong, Mone is required to allege that USC engaged in adverse employment actions as a result of <u>perceived disability</u>. Nowhere is Mone required to allege that UCS admits to having a perception; Mone is required to allege that UCS took adverse actions. Mone gave UCS written notice that she was being treated as if she had a "perceived disability", rather than an "actual/ diagnosed disability". This occurred the moment UCS adopted its "COVID policy" which established the perceived disability as: "a threat of deadly contagious disease". The policy itself outlines both the "perceived disabilty" and the adverse employment actions. "Perceived disabilty" is one complete unit, it is not separated into perception and disability as distinct terms. UCS is playing with language and trying to separate out a "perception" as a stand-alone pleading requirement. However, the term is meaningless without its qualifier: disability. The "regarded as" prong specifically states that the pleading requirement is alleging the adverse action is taken in response to a condition of "perceived disability".

Mone also never claimed that UCS was applying adverse employment actions on the basis of a perceived disabilty that might develop in the future. (See *Answer* pp. 25-27) USC demonstrated that it acted as if the perceived disability exists in the present

moment, and not in some future time, because Mone was given deadlines to receive treatment and to produce evidence of treatment. Thus, there is no evidence that UCS terminated Mone's employment because it determined Mone would develop a perceived disability "in the future". The perceived disability was: *a current and on-going threat of deadly, contagious disease*.

UCS never performed an individualized assessment of Mone, as required by statute, UCS simply acted *as if* all employees had a perceived disability which required medical treatment; which is to say: *as if* they posed a "direct threat". Then it acted *as if* all employees who refused medical treatments still had the perceived disability; which is to say: *as if* they still posed a "direct threat". UCS is required to objectively determine first that Mone poses a direct threat prior to taking adverse employment actions such as denying access to the job, creating new adverse conditions of employment, engaging in disparate treatment and terminating employment. UCS failed to do so and thus cannot claim that its adverse employment actions were ADA compliant. (See *Answer* pp. 27-28) This is the argument presented by Mone which UCS failed to effectively address because it misconstrued the argument.

**b. UCS missclassified Mone as having a perceived disability.**

Additionally UCS, in its answer, completely garbled the second "misclassified" (record of) prong Mone also sufficiently claimed, by which Mone states that the moment Mone refused mitigation measures, UCS misclassified Mone as *an ongoing*

- 8 -

*threat of deadly contagious disease.* UCS erroneously contends that it is not guilty of misclassifiying Mone as having a perceived disability because being "unvaccinated" for "COVID-19" does not qualify as a perceived disability, or a disability of any kind. However, this argument is completely unrelated to Mone's claim. Mone claims that once Mone refused the "COVID vaccine" mitigation measures, and any other medical treatments, UCS misclassified Mone as having an *on-going* perceived disability; the exact same perceived disability it regarded Mone as having prior to the release of "COVID vaccines" but with the added factor that now Mone refused all the treatments the "COVID policy" imposed. Thus, UCS misclassified Mone as having an *on-going, unabated* perceived disability and it fired Mone on this basis.

UCS erroneously argues that Mone failed to allege that the perceived disability substantially limited major life activities. Mone is not required to allege that a "perceived disabilty" substantially limits major life activities. This is a requirement for an "actual (diagnosed) disability", not for a "perceived disability". The term "disability" is defined in statute and can refer to a perceived disabilty or an actual disability. However, in any case, the perceived disability Mone was misclassified as having has been established as: "being an on-going threat of deadly contagious disease" and UCS acted *as if* this substantially limited Mone's ability to perform the job safely, enter the premises, be within 6 feet of others, etc. Therefore, to the extent that it is necessary, Mone *has alleged* that UCS misclassified Mone as having a perceived disability that

substantially limited several major life activities. UCS quoted cases that are not holdings to support the false argument that the perceived disability is "being unvaccinated for COVID" (See *Answer* pp. 30-31). However, this is completely fabricated and Mone strictly claims that the perceived disability is: "*being an on-going threat of deadly contagious disease*".

**IV. Mone has sufficiently alleged retaliation**

Mone is required to allege that she engaged in protected activity and that her employer was aware that she engaged in protected activity. Both of these conditions were met by Mone repeatedly and the initial instance has been established by a letter dated September 8, 2021 addressed to UCS Judge Marks. UCS, in the Answer, states that Magistrate Bloom correctly identified Mone's sole "protected activity" as occurring only when she filed an EEOC complaint and therefore none of the prior discrimination and abuse Mone suffered at the hands of the employer counts as retaliation. This is false.

As a preliminary matter, EEOC guidance on what constitutes protected opposition is instructive: "A communication or act is protected opposition as long as the circumstances show that the individual is conveying resistance to a perceived potential EEO violation."[3] This is the sole criteria, it does not need to be an EEOC complaint, it simply needs to be a communication (written or verbal) that conveys resistance to a

---

[3] "Questions and Answers: Enforcement Guidance on Retaliation and Related Issues" EEOC-NVTA-2016-5

violation of rights protected under the statute, thus the term: protected opposition. Mone's affidavit and complaint contain multiple communications sent to UCS in which Mone's resistance to violations of protected rights are outlined in detail.

Mone decides when to initiate the protected action, not UCS. It is specious to argue that Mone was *lawfully* fired for being "unfit to serve" because of Mone's refusal to take "COVID drugs" dictated by the "COVID policy", when Mone is actively challenging the "COVID policy" for rights violations. The policy is perceived as illegal and this is the reason Mone opposed it.

Magistrate Bloom also failed to correctly identify the causal relationship between Mone's protected opposition and the adverse employment actions. EEOC guidance on retaliation specifically advises its agents that the causal relationship is established by reviewing evidence of adverse actions taken *after* the plaintiff has engaged in protected activity. Protected status is designed to make the adverse actions stop while the EEOC investigates. If the actions continue, or multiply as happened in this case, then the causal relationship is firmly established.

> Suspicious timing. The causal link between the adverse action and the protected activity is often established by evidence that the adverse action occurred shortly after the plaintiff engaged in protected activity.[4]

Mone also alleged receiving adverse employment action "but-for" no other reason than because of refusing the policy measures, and UCS admits this. Mone pled the causal

---

4  *EEOC Enforcement Guidance on Retaliation and Related Issues* issued August 25, 2016

relationship sufficiently and the rules state that Judge Gujarati is required to accept Mone's allegations at true at the pleading stage, but the Judge failed to do so.

EEOC enforcement guidance on facts establishing the causal link in retaliation is instructive:

**3. Examples of Facts That May Support Finding of Retaliation**

> Different types or pieces of evidence, either alone or in combination, may be relevant to determine if the above causation standard has been met. In other words, different pieces of evidence, considered together, may allow an inference that the materially adverse action was retaliatory.
> The evidence may include, for example, suspicious timing, verbal or written statements, comparative evidence that a similarly situated employee was treated differently, falsity of the employer's proffered reason for the adverse action, or any other pieces of evidence which, when viewed together, may permit an inference of retaliatory intent.[5]

Mone supplied <u>direct evidence of retaliation,</u> which satisfies the "but-for" condition of retaliation. Mone fully alleged that the only reason she was fired was because she refused the medical treatments and the defendant even admitted this. She has also alleged that she gave UCS notice of her claims and that they were based on discrimination and non-job-related treatments, tests and inquiries. UCS has not provided a credible reason for retaliating against the plaintiff that is not discriminatory, as claiming that she was fired because she was "unfit to serve" and was insubordinate to a policy with potential ADA violations only proves Mone's claims. Therefore the Judge had abundant direct evidence of retaliation. The Judge arbitrarily and capriciously refused to acknowledge the evidence and failed to follow established procedure in order to advocate for UCS.

---

[5] *EEOC Enforcement Guidance on Retaliation and Related Issues* issued August 25, 2016

## CONCLUSION

For the reasons herein the District Court's decision constitutes an abuse of discretion and is clearly erroneous and should be reversed.

WHEREFORE the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this 13th day of November, 2023.

*[signature]*

Colleen Mone, Appellant

## CERTIFICATE OF COMPLIANCE

I, Colleen Mone, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 2,292 words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: /s/ CM

## CERTIFICATE OF SERVICE

I, Colleen Mone, hereby certify that a true and correct copy of the foregoing Reply Brief was duly served upon Andrea Trento, at the address of NYS Office of the Attorney General, Division of Appeals & Opinions; 28 Liberty Street, 23rd Floor; New York, NY 10005, via electronic mail on this 13th day of November, 2023.

I further certify that one true and correct copy of the foregoing Reply Brief was duly served upon the United States Court of Appeals for the Second Circuit at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, via electronic mail on this 13th day of November, 2023.

By: /s/ CM